### JOHNSON v. COMMISSIONER OF INTERNAL REVENUE.
### No. 97.

Circuit Court of Appeals, Second Circuit.
Dec. 14, 1936.

For opinion below, see 33 B.T.A. 1003.

Kellogg, Emery & Inness-Brown, of New York City (Dean Emery, J. Fearon Brown, and J. Raymond Kochendorfer, all of New York City, of counsel), for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges. ·

SWAN, Circuit Judge.

The deficiency in dispute results from the disallowance of a deduction of $24,-000 claimed by the petitioner to have been paid as interest on his promissory note, and to be an allowable deduction from gross income under section 23(b) of the Revenue Act of 1928 (45 Stat. 799 [26 U.S.C.A. § 23 and note]). The facts reveal an ingenious attempt to reduce taxes by means of a plan which was intended to give the character of interest payments to money used to pay insurance premiums on policies upon the life of the petitioner. There were 15 such policies, all of them payable to his wife. The total annual premiums amounted to about $21,000, and prior to the year 1931 Mr. Johnson had paid them. In that year money for the premiums was provided pursuant to the transactions which are now to be described.

On July 3, 1930, Mr. and Mrs. Johnson proceeded to put into effect a plan, suggested to them by ·an insurance broker and his attorney, which had the threefold objective of reducing Mr. Johnson's annual income taxes, reducing estate taxes in the event of his death, and putting the aforesaid insurance policies in trust for the protection of Mrs. Johnson and the children. It was carried out as follows: Mr. Johnson borrowed $400,000 from the National City Bank upon his unsecured demand note. He then delivered to Mrs. Johnson his check for a like amount, which she forthwith deposited in her account in the same bank. She then executed two trust deeds which Mr. Johnson had had prepared, to City Bank Farmers Trust Company as trustee, one called "the funded trust," and the other called "the insurance trust," and assigned the aforesaid insurance policies to the trustee under the insurance trust to be held for the benefit of Mrs. Johnson for life and thereafter for her surviving children. She also delivered to the trustee under the funded trust her check for $400,000 which was to constitute the corpus of this trust. The funded trust provided that the trustee was to manage the fund, and to apply the net income thereof in payment of premiums on the said insurance policies, the balance of net income in any year to be paid to Mrs. Johnson. The funded trust also provided, among other things, that "it shall be the duty" of the trustee to loan to Mr. Johnson at any time on his written request the whole or any part of the principal of the trust estate to be secured solely by his demand note or notes bearing 6% interest. The trustee was expressly forbidden to assign any note received from Johnson or to take any action to collect the principal or interest thereof except as directed in writing by Mrs. Johnson or her executor or administrator. Upon Mr. Johnson's death the trustee was to present all notes for payment, and to turn over the proceeds collected, or the notes them-

selves if payment was refused, to Mrs. Johnson, or to her estate. The funded trust was to terminate upon the death of Mr. Johnson. Both trusts were declared to be irrevocable and to be governed by the laws of New York. On July 8, 1930, Mr. Johnson requested that the trustee make a "loan" to him of $400,000, pursuant to the terms of the trust deed. He delivered to the trustee his demand note for this amount bearing 6% interest, and used the money received to pay off his loan at the National City Bank, adding $250 to cover five days' interest thereon. Upon his note held by the trustee he has paid interest quarterly. Out of the $24,000 paid by him to the trustee in 1931, the trustee paid the insurance premiums, taxes, etc., and reported $21,035.29 as income taxable to it. The balance (less commissions and expenses) of $2,712.57 was paid by the trustee to Mrs. Johnson and was included in her income tax return. In Mr. Johnson's return for 1931 he claimed as a deduction for interest the $24,000 paid to the trustee. This the Board disallowed on the ground that "there was no bona fide gift made by Johnson to his wife or loan secured by Johnson from the trustee."

Counsel for the petitioner asserts that the transactions above described resulted in the following legal relations: Mr. Johnson made an absolute and unconditional gift of $400,000 to his wife; with her own property she set up a trust having a capital of $400,000; the trustee loaned this sum to Mr. Johnson upon his demand note bearing interest, and he paid such interest to the trustee in 1931. If such were indeed the legal relations of the parties, it would follow as of course that the taxpayer should be allowed the claimed deduction, for it is too well settled to require discussion that legal transactions cannot be upset merely because the parties have entered into them for the purpose of minimizing or avoiding taxes which might otherwise accrue. Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355; Chisholm v. Commissioner, 79 F.(2d) 14, 15, 101 A.L.R. 200 (C.C.A. 2); Sawtell v. Commissioner, 82 F.(2d) 221, 222 (C.C.A. 1); Commissioner v. Yeiser, 75 F.(2d) 956, 958 (C.C.A. 6). Despite such purpose, the question is always whether the transaction under scrutiny is in reality what it appears to be in form. Nor could we hold, if in realty there was a loan by the trustee to Mr. Johnson, that it would be invalidated by the restriction in the trust deed forbidding the trustee to assign the note, or to enforce payment without the direction of the settlor. It is inherent in a demand note that the payee has the power to decide when to call the loan, or to determine not to enforce his rights at all. If the payee is a trustee, no reason is apparent why such decisions may not be reserved to the settlor of the trust. So long as any one has the right to compel the borrower to pay upon demand, the debt remains; and the Board made no finding that there was any agreement that Mrs. Johnson should never direct the trustee to enforce payment. Although Mr. Johnson may have had such confidence in his wife's forbearance that he knew the note would not be collected during his life, nevertheless she was left legally free to direct the trustee to collect it. The distinction, though often hard to detect in fact, is perfectly clear in principle between creating rights which you trust will not be exercised and creating no legal rights at all; a transaction of the first kind changes existing legal relations between the parties, the other does not. On the assumption that Mrs. Johnson's money went into the trust, the trustee's loan to Mr. Johnson created a debt upon which he paid interest.

But there is a fallacy in the petitioner's contention, and it lies in the premise that he made an absolute and unconditional gift of $400,000 to his wife, and that her money set up the funded trust. There was an agreement between them that the money he made available to her was to be used in only one way; she was to pass it to the trustee upon terms which bound the trustee to return it to him upon request. Everything was done at the same time and as part of one transaction. Not for an instant did Mr. Johnson lose control of his "gift," nor did Mrs. Johnson or the trustee have possession of it free from a duty to return it to him. See In re Schmidlapp's Estate, 236 N.Y. 278, 285, 140 N.E. 697. To constitute a valid gift inter vivos the donor must have a clear and unequivocal intention to part with his property presently and forever. Snavely v. Henderson, 204 F. 978, 979 (C.C.A. 8); Gannon v. McGuire, 160 N.Y. 476, 481, 55 N.E. 7, 73 Am.St.Rep. 694. If the donor did not have the intention to part with present interest and control, the gift fails. In re Miller's Estate, 236 N.Y. 290, 140 N.E. 701. The transaction at bar was

no different than if Johnson himself had delivered money to the Trust Company to hold until he should request its return as a "loan." The payment to Johnson of money which he himself supplied to the trustee for the very purpose cannot be a loan to him or furnish consideration for his note. Hence the practical and the legal effect of what was done was to set up a trust composed solely of Johnson's note given without consideration. Such a gratuitous promise is unenforceable either by the trustee or by the beneficiary. American Law Institute, Restatement, Trusts, § 26. See Merrill v. Peaslee, 146 Mass. 460, 16 N.E. 271, 4 Am.St.Rep. 334. It is no more than a promise to make a gift in the future. See Holmes v. Roper, 141 N.Y. 64, 36 N.E. 180. Consequently the quarterly payments made to the trustee and denominated "interest" were really gratuitous payments, and the deduction of them from gross income was properly disallowed. See Gilman v. Commissioner, 53 F. (2d) 47, 80 A.L.R. 209 (C.C.A. 8).

Order affirmed.